24-1932

# United States Court of Appeals

*for the*

# Fourth Circuit

MISSION INTEGRATED TECHNOLOGIES, LLC,

*Plaintiff-Appellee*,

– v. –

JOSHUA R. CLEMENTE,

*Defendant-Appellant,*

and

TIMOTHY G. CLEMENTE,

*Defendant-Appellant,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA
(1:23-CV-01608-LMB-WBP)

## CORRECTED OPENING BRIEF OF APPELLANT
## MISSION INTEGRATED TECHNOLOGIES, LLC

LAURIN H. MILLS
BRIAN P. DONNELLY
WERTHER & MILLS, LLC
2121 Eisenhower Avenue
Suite 608
Alexandria, Virginia 22314
(703) 547-4693
*Counsel for Appellant Mission Integrated Technologies, LLC*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-1932</u>                        Caption: <u>Mission Integrated Technologies, LLC</u>
                                                  <u>v. Joshua Clemente and Timothy G. Clemente</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Mission Integrated Technologies, LLC</u>
(name of party/amicus)

_____

who is <u>Appellant</u> _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☒NO


2.  Does party/amicus have any parent corporations?                ☒YES ☐NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    F2E Holdings LLC


3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐YES ☒NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☒NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☒NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☒NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?            ☐YES ☒NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:      _/s/Laurin H. Mills_____       Date:  _January 14, 2025_

Counsel for:   _Mission Integrated Technologies, LLC_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................... ii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................1

STATEMENT OF CASE ........................................................................2

SUMMARY OF ARGUMENT.............................................................16

ARGUMENT .......................................................................................18

I.      Standards of Review. ................................................................18

II.     The District Court Erred by Granting Summary Judgment Against
        MIT on Statute-of-Limitations Grounds.........................................19

        A.      The District Court Did Not Perform a Choice-of-Law Analysis. .......20

        B.      Had the District Court Applied Delaware Statute-of-Limitations
                Law to MIT's Claim for Breach of Contractual Fiduciary
                Duties (Count I Against Tim), Disputed Facts on the Issues
                of Fraudulent Concealment and Equitable Tolling Would
                Have Prevented Summary Judgment. ...................................21

        C.      The District Court Improperly Dismissed MIT's Business
                Conspiracy Claim (Count III Against Both Appellees) Based
                on Irrelevant Conduct Outside the Limitations Period. .....................26

        D.      The District Court Ignored Misrepresentations by Tim as
                Recent as July 2022 in Dismissing MIT's Fraud Claim
                (Count V Against Tim). ........................................................28

        E.      The District Court Improperly Dismissed MIT's Unjust
                Enrichment Claim (Count IV Against Josh) Based on the
                Date Josh Applied for the ARES Patent, Not the Date on
                Which the ARES Patent Was Granted......................................29

        F.      The District Court Dismissed MIT's Breach-of-Contract Claim
                Against Josh (Count VI) Based on Purported 'Admissions'
                That Are Not Supported by the Record.....................................31

III.    The District Court's Award of Attorneys' Fees to Tim Should Be
        Reversed..................................................................................33

CONCLUSION ....................................................................................35

REQUEST FOR ORAL ARGUMENT..................................................35

i

# TABLE OF AUTHORITIES

## Cases

*Adv. Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
  182 Fed. Appx. 994 (Fed. Cir. 2006) ................................................................25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................19

*Bako Pathology LP v. Bakotic*, 288 A.3d 252 (Del. 2022) .....................................34

*Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404 (4th Cir. 2015) .................19

*East West, LLC v. Rahman*, 873 F. Supp. 2d 721 (E.D. Va. 2012).........................29

*General Electric Co. v. Wilkins*, 2011 WL 3163348 (E.D. Cal. July 26, 2011).......24

*GIV, LLC v. IBM Corp.*, 2007 WL 1231443 (E.D. Va. 2007) .................................30

*Gordon v. Schilling*, 937 F.3d 348 (4th Cir. 2019) .................................................18

*Informatics Applications Grp., Inc. v. Shkolnikov*,
  836 F. Supp. 2d 400 (E.D. Va. Dec. 27, 2011) ....................................................25

*Johnson v. City of Aiken*, 278 F.3d 333 (4th Cir. 2002) ..........................................19

*Klein v. Verizon Communications, Inc.*, 674 Fed. Appx. 304 (4th Cir. 2017) .........20

*Lismont v. Alexander Binzel Corp.*,
  2013 WL 6095461 (E.D. Va. Nov. 18, 2013) .......................................................31

*Murray v. Rolquin*, 2023 WL 2421687 (Del. Ch. Mar. 9, 2023) ............................22

*MV Circuit Design, Inc. v. Omnicell, Inc.*,
  2015 WL 1321743 (N.D. Ohio March 24, 2015) ......................................... 24, 26

*Safe Haven Wildlife Removal and Property Mng't Experts, LLC v.
  Meridian Wildlife Services, LLC*, 736 F. Supp. 3d 432 (W.D. Va. 2024).............27

*Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at
  Broadlands, LLC*, 713 F.3d 175 (4th Cir. 2013)..................................................19

*Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*,
  299 F. Supp. 2d 565 (E.D. Va. 2004)...................................................................30

*United States v. Ancient Coin Collectors Guild*, 899 F.3d 295 (4th Cir. 2018).......18

**Other Authorities**

https://www.uspto.gov/patents/basics/apply/provisional-application
    (last accessed May 21, 2024).................................................................................6

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Virginia (the "District Court") had federal-question jurisdiction under 28 U.S.C. § 1331 when this case was removed from the Circuit Court for Fairfax County, Virginia, to the District Court after Defendant Joshua Clemente asserted a patent-infringement counterclaim under 35 U.S.C. § 271.  JA2.

This Court has subject-matter jurisdiction over this appeal under 28 U.S.C. § 1291 because the District Court entered a final order and judgment disposing of all parties' claims on September 16, 2024.  JA2403-2404.

On September 23, 2024, Appellant, Mission Integrated Technologies, LLC ("MIT"), timely filed its Notice of Appeal pursuant to Fed. R. App. P. 3(a) and 4. JA16.  The District Court stayed the enforcement of its monetary judgment after MIT deposited 125 percent of the judgment amount into the Registry of the District Court.  JA16.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err by orally granting summary judgment in favor of Appellees on statute-of-limitations grounds?

2.      Did the District Court abuse its discretion by awarding an excessive quantum of attorneys' fees to Appellee Timothy Clemente?

## STATEMENT OF CASE

### *Relevant Facts*

MIT is a member-managed limited liability company organized under Delaware law with its principal place of business in Vienna, Virginia.  JA488-489, JA1135.  MIT's sole product is the ARES, a vehicle-mounted articulating stairway capable of delivering response forces to buildings or aircraft in crisis situations.  *Id.* A picture of an ARES system is below:



MIT has three members: F2E Holdings, LLC ("F2E"), Timothy ("Tim") Clemente, and Kenneth Fournier.  JA488, JA1135.  Fahmi Alubbad owns 100% of F2E, and F2E has at all times owned a supermajority membership interest of at least 75% in MIT.  *Id.*

Joshua ("Josh") Clemente is a mechanical engineer and the son of Tim Clemente.[1]  JA489, JA1135,   Josh was never an employee or member of MIT. JA1135, JA1170 [JA2681-2684].[2]  Starting in 2013, at the request of his father, Tim, Josh worked on and produced "a lot of engineering on the original ARES and the new ARES."  JA1135, JA1171 [JA2685].

Pursuant to § 14(B) of the MIT Operating Agreement, all of Tim's design efforts were deemed works-for-hire, and thus MIT would have been at least a co-owner of any patent issued to Tim for the ARES.  JA1135, JA1542.

From 2014 to 2016, Josh performed services on behalf of MIT without sending an invoice or receiving any payment from MIT.  JA1136, JA1182 [JA2756].  In early 2017, after the original ARES system was a commercial failure, Josh began working on a redesign of the ARES.  JA492, JA1136.  Tim believed

---

[1] Because there are two Clemente's in this case, they are referred to as Tim (the father) and Josh (the son) to avoid confusion.

[2] The parties' Joint Appendix contains certain District Court pleadings that include condensed versions of certain deposition transcript excerpts as exhibits.  To conform with this Court's Joint Appendix Guidelines without modifying any pleading exhibits from the form in which they were filed in the District Court, non-condensed versions of those transcript excerpts have been included at the end of the parties' Joint Appendix.  Where portions of those transcripts are cited in this brief, Appellants cite the relevant page(s) of the original pleading exhibits, followed in brackets by the corresponding page(s) of the non-condensed versions of such exhibits.

that Josh "was doing [that work] for the benefit of MIT and for [Tim] as the president of MIT and his father." JA1136, JA1200 [JA2773].

In 2017, Josh asked his friend and business colleague, Jonathan Adam ("Adam"), to assist him in the ARES redesign efforts. JA1136, JA1215 [JA2838-2840]. Adam holds a master's degree in aerospace engineering and was a more experienced engineer than Josh. JA1136, JA1209-1210 [JA2811-2816]. Adam was unaware that Josh had any title with MIT, nor was Adam ever told that Josh had been promised any ownership interest in MIT. JA1136, JA1211 [JA2818-2819]. It was Adam's "understanding at the time [2017] . . . that Josh was just helping his dad." JA1136, JA1213 [JA2827]. Adam viewed his role at MIT as that of an unpaid intern and signed MIT's standard Mutual Non-Disclosure & Non-Circumvention Agreement. JA1136, JA1212-1213 [JA2824-2828].

It was disputed in the District Court whether Josh signed a non-disclosure agreement covering his work for MIT. Tim once believed that Josh had signed one, but Josh does not recall signing one and no party in the case produced a written non-disclosure agreement with Josh's signature. JA1141, JA1176-1177, JA1198, JA1520.

In the spring of 2017, MIT contracted with Cardinal Scientific, Inc. ("Cardinal") to assist in the development and construction of an ARES prototype. JA492, JA1136. MIT required Cardinal to sign its standard Mutual Non-

4

Disclosure & Non-Circumvention Agreement, which was executed by Alubbad on behalf of MIT. JA1137.

Later in 2017, MIT also contracted with 21st Century Group ("21st Century") to create software to operate a wireless controller for the redesigned ARES. JA492, JA1137. Josh signed the Statement of Work with 21st Century on behalf of MIT, purporting to be MIT's "VP of Engineering." JA492-493, JA1137. 21st Century sent the source code and all work product it developed for MIT only to Josh, even though 21st Century's contract was with MIT. JA1137, JA1172-1173 [JA2691-2693].

MIT required 21st Century to sign its standard Mutual Non-Disclosure & Non-Circumvention Agreement, which was executed by Tim on behalf of MIT. JA1137, JA1559. Section 1.3 of that agreement describes in detail the many kinds of information that MIT considered to be confidential. JA1137, JA1552-1553.

On July 17-19, 2017, MIT demonstrated a working model of the redesigned ARES to a delegation from the United Arab Emirates and its local contractor. JA1137, JA1518. Josh and Tim attended and participated in the ARES demonstration on July 17-19, 2017. JA1137, JA1178 [JA2739], JA1518. On July 25, 2017, Tim filed a provisional patent application for the new ARES design ("Tim's 2017 Provisional Application"), in which he named both himself and Josh

5

as inventors of the ARES.  JA1137, JA1216.[3]  Neither Josh nor Tim informed

Alubbad of the filing of Tim's 2017 Provisional Application.  JA1137, JA1518.

Tim ultimately abandoned Tim's 2017 Provisional Application and, as a result, the

Patent Office never published it.  JA1138.

On November 21-24, 2017, Josh, Tim, Alubbad, and Adam attended a trade

show in Paris, France, called Milipol, at which MIT displayed the redesigned

ARES.  JA493, JA1138.  The ARES was a "hit" at Milipol.  JA1138, JA1176

[JA2721], JA1181 [JA2749], JA1518.

In December 2017, after seeing how well the ARES was received at Milipol,

Josh demanded a 10% ownership stake in MIT.  JA1138, JA1518.  Alubbad

informed Josh that any ownership percentage in MIT would need to come from

Tim, which was consistent with F2E's and Tim's agreement when they founded the

company.  JA1138, JA1179 [JA2742], JA1518.  Alubbad offered Josh employment

with MIT at a salary of $80,000 per year and told him that once MIT had business,

and MIT had repaid all outstanding loans, Alubbad would consider giving Josh a

5% stake in MIT from F2E's share.  *Id.*  That offer was conditioned on Josh

working fulltime for MIT.  *Id.*  Josh rejected the offer.  *Id.*

---

[3] A provisional patent application is a means for establishing the benefit of an
earlier filing date for a subsequently filed non-provisional patent application
(which must be filed within one year of the provisional application, or the latter is
deemed abandoned).  Provisional applications are not examined by the USPTO.
https://www.uspto.gov/patents/basics/apply/provisional-application.

On November 20, 2018, Josh secretly filed a provisional patent application on the ARES design ("Josh's 2018 Provisional Application"), in which he named himself as the sole inventor.  JA495, JA1138.  Josh made Tim aware that he was filing Josh's 2018 Provisional Application around the time it was filed.  JA1138, JA1180 [JA2746].  On November 11, 2018, Tim sent Josh numerous ARES documents that had been used in Tim's 2017 Provisional Application so Josh could use them in preparing Josh's 2018 provisional application.  JA1138, JA1203-1206 [JA2790-2793].  Neither Josh nor Tim ever made Alubbad aware of Josh's 2018 Provisional Application when it was filed.  JA1138, JA1518.

It is MIT's position that the filing of Josh's 2018 Provisional Patent Application on November 20, 2018 is the earliest possible relevant act (for statute-of-limitations purposes) in the business conspiracy between Tim and Josh to usurp MIT's intellectual property rights in the ARES.

In August 2019, Tim met with Alubbad and F2E's attorney at Alubbad's office to discuss demands F2E had made for Josh and Tim to provide one of MIT's contractors with confidential computer-aided-design ("CAD") drawings and other ARES technical materials produced by Cardinal and the software and bill of materials for the ARES handheld controller produced by 21st Century, as well as to provide F2E with the source code and all work product from both Cardinal and

21st Century.  JA494-495, JA1139, JA1519.  Tim secretly recorded audio of that August 2019 meeting.  JA494-495.

During the August 2019 meeting at Alubbad's office, F2E's attorney asked Tim if he had filed a patent application for the ARES.  JA1139, JA1519.  Tim responded that "he" did not currently have a patent.  *Id.*  Tim further explained that "he" had filed a provisional patent application "a couple years ago" just so MIT could use the term "patent pending" on marketing materials for the ARES.  *Id.*  Tim's July 2017 Provisional Application had been abandoned more than a year before the August 2019 meeting.  Tim did not disclose the existence of Josh's 2018 Provisional Application, which remained pending and unpublished at that time, during the August 2019 meeting.  *Id.*

On November 19, 2019, Josh filed a non-provisional patent application on the ARES ("Josh's 2019 Non-Provisional Application"), again in his name only.  JA1139, JA1296.  Neither Josh nor Tim made Alubbad aware of Josh's 2019 Non-Provisional Application.  JA1139, JA1519.  Unbeknownst to Alubbad, the Patent Office published Josh's 2019 Non-Provisional Application on May 21, 2020.  JA495.

On November 16, 2021, the Patent Office awarded Josh U.S. Patent No. 11,174,677 (the "ARES Patent").  JA335, JA1139.  Tim knew about the ARES Patent the same week it issued but did not tell Alubbad.  JA1139, JA1175

[JA2717].  On November 17, 2021, Josh had a text-message exchange with Adam in which he told Adam he planned to "shaft" Alubbad with the ARES Patent by demanding royalties for the ARES under threat of litigation.  JA1139, JA1174 [JA2705-2707], JA1214 [JA2833-2834], JA1465.

Alubbad first learned about the ARES Patent on March 3, 2022.  JA495, JA1139, JA1519.  The next day, on March 4, 2022, Tim presented Alubbad with an agreement, signed by Tim with blank spaces for Alubbad and Josh to sign, under which MIT would give Josh membership interests and other financial consideration in exchange for assigning ownership of the ARES Patent to MIT.  JA495, JA1139-1140, JA1468, JA1519.

After learning that Josh had secretly obtained the ARES Patent, Alubbad hired an attorney, on behalf of MIT, to assess the extent to which Josh and Tim had misappropriated MIT's confidential information, to obtain the return of such information, and to obtain an assignment to MIT of all patent rights secretly usurped by Josh.  JA495-496, JA1140, JA1519-1520.

In July 2022, Fournier and Tim signed a settlement agreement to resolve their disputed ownership claims in MIT (the "July 2022 Agreement").  JA496-497, JA788-797, JA1140.  Tim agreed that the ARES Patent and all other confidential MIT information "is and shall remain, at all times, the sole property of the Company, regardless of Joshua's, Kenneth's, or Timothy's past use . . . and

regardless of Joshua's, Kenneth's, or Timothy's involvement, if any, in the creation or acquiring" of the information.  JA794, JA1140.  While there were also settlement negotiations with Josh during the summer of 2022, those negotiations did not result in a settlement agreement with Josh.  JA496, JA1140.

In December 2023, F2E formally removed Tim as President of MIT pursuant to the MIT Operating Agreement.  JA1141.

### *Procedural History*

MIT filed this lawsuit in the Circuit Court for Fairfax County, Virginia, on October 16, 2023.  JA18.  On November 24, 2023, Josh filed a counterclaim against MIT alleging infringement of the ARES Patent.  JA2.  Josh removed the case to the District Court on November 27, 2023.  *Id.*

Troutman Pepper Hamilton Sanders LLP entered its appearance on behalf of Tim on January 17, 2024.  JA409.

Discovery in the District Court ran from November 29, 2023, to April 19, 2024.  After the close of discovery, on May 6, 2024, MIT voluntarily dismissed its claim against Tim and Josh for misappropriation of trade secrets (Count II).  JA483.  Tim and Josh each moved for summary judgment on all remaining counts

asserted against them by MIT on May 10 and 11, 2024, respectively.  JA484, JA858.  MIT moved for partial summary judgment on May 10, 2024.[4]  JA8.

While the summary-judgment motions were pending, the parties engaged in mediation before Magistrate Judge William Porter.  JA10-11.  Despite two full days of good-faith negotiations, they were unable to reach a settlement.  *Id.*[5]

On June 14, 2024, the District Court held a hearing on the pending summary-judgment motions.  JA2169.  At the start of the hearing, the District Court expressed its dismay that the case had not settled.  JA2171-2173. Immediately before issuing its oral ruling, the District Court stated:

> I'm going to rule today, and it's going to change the landscape of the case dramatically, and perhaps the rulings from today, you may want to consider going back to Judge Porter to see whether you can bring this case to, you know, fruition.

JA2173.

The District Court denied MIT's motion for partial summary judgment on Josh's counterclaim for reasons immaterial to this appeal.  JA2173-2174.  The

---

[4] MIT moved for partial summary judgment on Josh's patent-infringement counterclaim, arguing (1) Josh could not prove damages; and (2) Josh should be equitably estopped from asserting the ARES patent against MIT.   The District Court denied MIT's motion.  Because MIT prevailed at trial on Josh's counterclaim, however, MIT does not appeal that ruling.

[5] While Appellant does not believe it appropriate to disclose the substance of the parties' negotiations, it is relevant to note that settlement did not fail due to lack of agreement on monetary terms.

District Court then granted Josh's summary-judgment motion in its entirety, and

most of Tim's summary-judgment motion, on statute-of-limitations grounds.

JA2174-2176.

The District Court's entire ruling on Josh's motion is below:

> So[,] Joshua's motion for summary judgment, first of all, is to
> Count 3, which is the business conspiracy. That's got a five-year
> statute of limitations. And it looks to the Court quite clearly that
> the statute of limitations has been exceeded in this case because
> the – most of the issues that the plaintiff is complaining about
> occurred more than five-years before the time period in which
> this case was filed.
>
> Count 4 is an unjust enrichment claim. And even if the Court
> accepts the November 2018 date as the date when the patent was
> applied for, there's a three-year statute of limitations of that
> claim, and again, that would make the complaint time-barred.
>
> And Count 6 is the breach of contract. And now it's been
> admitted that there was never a contract, so that one obviously
> fails.
>
> So, I'm going to grant summary judgment for Joshua on Counts
> 3, 4, and 6, which I believe are the only counts that are filed
> against him.

JA2174-2175.[6]

The District Court then issued an equally cursory ruling on Tim's motion:

> In terms of Timothy, again, there are time bars on all of his – all
> of the counts against him except for the final breach of contract
> claim which has to do with the 2022 agreement. That one will
> go forward; it's not time-barred.

---

[6] MIT never admitted that there was no contract with Josh. Whether he signed a
non-disclosure agreement was a disputed fact.

> So what I'm leaving you all with today is, the case goes forward as to Count 7, which is the breach of contract claim against Timothy Clemente only, and it goes forward on the counterclaim for patent infringement. All right. That's the new lay of the land. So go back perhaps with that understand[ing] to Judge Porter to see whether you can finish up this case.

JA2175.

After observing that MIT could not, in the District Court's view,

"appropriately argue that [it] was not on notice that a patent had been applied for

because they were putting patent pending on the product," JA2175-2176, the

District Court concluded:

> What particularly gets my attention is, well, according to the record that I see here that Josh worked for – since, what, 2013 for this company, and my understanding is was [sic] never paid. And that, I mean, in terms of the equitable claims that the plaintiff raised, you know, in terms of clean hands and unjust enrichment, it went in the other direction from what I can see from this record.

> So, in any case, it appears as though the plaintiff has a very good product, it's a product that has a definite market. It looks as though that Joshua and probably Timothy made huge contributions to the technology, and, therefore, this is the kind of case that should settle. And hearing that there's apparently no monetary issue that's holding things up, it's just a matter of trust – I know in these cases when there's an issue about trade secrets and a belief that there has been some improper use of trade secrets and there's a failure to trust the other side that they've given back everything, there should be a way of working that out among reasonable people.

JA2176.

On June 20, 2024, MIT voluntarily moved to dismiss its remaining claim against Tim for breach of contract as moot because it had received the relief requested in that count (return of MIT's confidential information) during settlement negotiations. JA11, JA2179. The Court granted that motion the same day. JA2179.

Josh's patent-infringement counterclaim went to trial from July 8-10, 2024. JA13. On July 10, 2024, the jury returned a verdict in MIT's favor on all issues, invalidating all 16 patent claims asserted by Josh against MIT. JA13-14, JA2180-2183. Josh has not appealed that verdict and judgment.

On July 24, 2024, each of the parties filed a motion seeking attorneys' fees. JA14, JA2184. The District Court decided those motions at a hearing on September 13, 2024. JA2392. During that hearing, the District Court once again expressed its displeasure that the case did not settle and cited detailed and inappropriate knowledge of portions of the parties' settlement discussions:

> You all met with Judge Porter twice to try and settle this case. The case should have settled, in my view, and I've said that to you many, many times. I don't know what the problem was, I don't know what hung it up. I thought at one point you were on the edge of settling. I know in – in the case of Josh, he would have settled the case, given the patent rights back to the plaintiff. All he wanted was $50,000, given the years he had worked for the company and the company not having reimbursed him for most of that work, that was not an unreasonable approach on his part. . . . But, in any case to have spent, I think, close to 12 to 14 hours trying to settle and not being able to settle is always worrisome to the Court as to what was going on.

JA2397-2398.

The District Court then ruled on the parties' fees motions. The District Court denied MIT's motion for fees against Josh, ruling that Josh's patent-infringement counterclaim against MIT was not so weak as to qualify as an "exceptional case" under 35 U.S.C. § 285. JA2396. The District Court also denied Josh's motion for fees against MIT, ruling that Josh's motion was deficient. JA2396-2397. No party has appealed either of those rulings.

The District Court granted Tim's motion for fees against MIT with little analysis, awarding Tim nearly all of his requested fees, save for a 10% reduction for hours worked that "looked to the Court to be somewhat excessive and unnecessary." JA2397-2400. The District Court did not reference any of the legal standards that applied to its attorneys' fees determination in its oral ruling.

### Orders on Appeal

MIT has appealed the following Orders:

- The District Court's Order dated June 14, 2024, granting Josh's summary-judgment motion in its entirety, JA2178;

- The District Court's Order dated June 14, 2024, granting Tim's summary-judgment motion in part, JA2178; and

- The District Court's Order dated September 13, 2024, granting Tim's motion for attorneys' fees, JA2403.

## SUMMARY OF ARGUMENT

Every cause of action that MIT alleged against Appellees stems from the central and indisputable factual allegation that Appellees (father and son) secretly conspired to usurp MIT's intellectual property on its only product, patent it in Josh's name only, and then use the wrongfully obtained patent to "shaft" the majority member of MIT into giving Josh 10% of MIT. Alubbad, the owner of MIT's majority member, F2E, did not learn of Appellees' scheme until March 3, 2022, when Tim first disclosed that Josh had obtained the ARES Patent.

Tim and Josh moved for summary judgment arguing, among other things, that all of MIT's claims were barred by the applicable statutes of limitations. While those motions were pending, the parties mediated for two days under the supervision of Magistrate Judge Porter and came close to settlement but did not reach one.

The District Court, which had at least some information about the settlement discussions, was displeased that the case did not settle and appeared to blame MIT in open court during the hearing on the Parties' summary-judgment motions. In a cursory oral ruling that conflated and/or ignored relevant facts, the District Court dismissed nearly all of MIT's claims against Appellees on statute-of-limitations grounds.

Tim then filed a claim for attorneys' fees against MIT based on a prevailing-party provision in the MIT Operating Agreement. On September 13, 2024, after again excoriating MIT for not settling the case, the District Court awarded Tim $356,097.60 in attorneys' fees and $18,464.10 in costs.

Summary judgment against MIT was not appropriate because the District Court failed to perform the required choice-of-law analysis before dismissing MIT's claims on statute-of-limitations grounds. With respect to MIT's contractual fiduciary-duties claim against Tim, the District Court ignored disputed facts that should have foreclosed summary judgement due to fraudulent concealment and equitable tolling under applicable Delaware law.

With respect to MIT's other claims, the District Court misapplied applicable Virginia law. With respect to MIT's business-conspiracy claim against both Appellees, the District Court improperly considered irrelevant conduct outside the limitations period. With respect to MIT's fraud claim against Tim, the District Court ignored material misrepresentations by Tim that fell well within the limitations period. With respect to MIT's unjust enrichment claim against Josh, the District Court improperly found that the limitations period began to run when Josh applied for the ARES Patent, not when he was unjustly enriched by the Patent Office awarding the ARES Patent. Finally, the District Court dismissed MIT's breach-of-

contract claim alleged in the alternative against Josh based on a purported "admission" that was wholly unsupported by the record.

If this Court reverses any of the District Courts summary-judgment rulings with respect to MIT's claims against Tim, it necessarily must reverse the District Court's fees award, which is based solely on a prevailing-party provision in the MIT Operating Agreement. If this Court does not reverse any of the summary-judgment rulings, it still should reverse the fees award because: (1) there is no evidence that the District Court even considered applicable Delaware law controlling such awards; and (2) the award appears to have been influenced by inappropriate (and inaccurate) information about settlement negotiations that never should have been before the District Court.

## ARGUMENT

### I.    Standards of Review.

This Court reviews the District Court's award of summary judgment *de novo*. *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019); *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 312 (4th Cir. 2018). The Court views "the facts and inferences reasonably drawn therefrom in the light most favorable to the nonmoving party." *Id.* (cleaned up). Summary judgment is properly awarded only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Butler*

*v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (cleaned up). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

This Court's review of the contractual basis of the District Court's award of attorneys' fees is also *de novo. Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 186 (4th Cir. 2013). This Court reviews the quantum of attorneys' fees awarded by the District Court for an abuse of discretion. *Johnson v. City of Aiken*, 278 F.3d 333, 336 (4th Cir. 2002).

## II. The District Court Erred by Granting Summary Judgment Against MIT on Statute-of-Limitations Grounds.

MIT asserted breach-of-contract and common-law fraud claims against Tim (Counts I, V and VII), a business-conspiracy claim against both Tim and Josh (Count III), and unjust-enrichment and breach-of-contract claims against Josh (Counts IV and VI). The District Court held that all but one of those claims (Count VII against Tim for breach of contract) were barred by the applicable statute of limitations. The District Court's holdings on those issues were legally erroneous for the reasons discussed below.

### A.      *The District Court Did Not Perform a Choice-of-Law Analysis.*

In order to decide whether any of MIT's claims were barred by a statute of limitations, the District Court first had to perform a choice-of-law analysis for each of MIT's claims. It did not do that.

The relationship between MIT and Tim was created and governed by the MIT Operating Agreement—a contract controlled by Delaware law. JA69. MIT thus argued that its claim against Tim in Count I for breaches of contractual fiduciary duties was governed by Delaware substantive law. JA1143-1144. All other claims against Tim—business conspiracy (Count III), fraud (Count V), and breach of a separate 2022 contract (Count VII)—were governed by Virginia substantive law. JA1144-1145. MIT showed that Delaware's statute of limitations applied to Count I and Virginia's statutes of limitations applied to all other claims on appeal. JA1145-1147.

Nothing in the District Court's oral ruling indicates that the District Court performed any choice-of-law analysis. The Fourth Circuit has repeatedly held that a district court's failure to conduct an appropriate choice-of-law analysis is reversible error. *See, e.g.*, *Klein v. Verizon Communications, Inc.*, 674 Fed. Appx. 304, 308 (4th Cir. 2017) (stating that "[t]he district court erred by failing to fully apply Virginia law as per the parties' clear intent reflected in the contractual choice of law provision in the 2010 Agreement"). As discussed below, if the District

Court had conducted a choice-of-law analysis and properly applied Delaware law to MIT's contractual fiduciary duty claim, it could not have granted summary judgment on Count I.

> **B.**    **Had the District Court Applied Delaware Statute-of-Limitations Law to MIT's Claim for Breach of Contractual Fiduciary Duties (Count I Against Tim), Disputed Facts on the Issues of Fraudulent Concealment and Equitable Tolling Would Have Prevented Summary Judgment.**

The duty MIT alleged Tim breached in Count I is his <u>contractual</u> duty of care and loyalty set forth in § 7(D) of the MIT Operating Agreement.  JA61-62. Thus, under Virginia's "borrowing statute," Delaware's three-year limitations period for contract claims controls Count I.  Va. Code § 8.01-247; 10 Del. C. § 8106; *Hansen v. Stanley Martin Cos., Inc.*, 585 S.E.2d 567, 572 (Va. 2003); *Juran v. Bron*, 2000 WL 1521478, *11 (Del. Ch. Oct. 6, 2000).  MIT's claim must be considered timely, therefore, unless it arose before October 16, 2020, three years before MIT filed this case.

MIT alleges Tim breached his contractual fiduciary duties to MIT by, among other things, (1) "willfully disregarding his duty to protect MIT's intellectual property;" (2) "empowering his son, Josh, to assert ownership of MIT's intellectual property, . . . including by obtaining a patent for ARES in his own name and without assignment to MIT;" and (3) "acting to the detriment of MIT to try to gain financial advantage for himself and his son, Josh."  JA398.  The evidence showed

that Tim concealed Josh's efforts to patent the ARES until March 3, 2022, when he finally disclosed to Alubbad that Josh had obtained the ARES Patent. The next day, March 4, 2022, Tim tried to use Josh's ownership of the ARES Patent to extract ownership shares and other financial concessions from MIT. A jury could easily find that those acts were a breach Tim's fiduciary duties to MIT. Not only did those acts occur within the three-year period preceding MIT's Complaint, they occurred within even the two-year limitations period Tim asked the District Court to apply.

Under Delaware law, moreover, a limitations period is tolled where (1) there is fraudulent concealment; or (2) the doctrine of equitable tolling applies. *In re Dean Witter*, 1998 WL 442456, *5-6 (Del. Ch. July 17, 1998). Fraudulent concealment exists where a defendant uses an "actual artifice" to throw the plaintiff off the trail of inquiry. *Id.* Equitable tolling applies, "even in the absence of actual fraudulent concealment," where a claim involves "wrongful self-dealing" and a plaintiff "reasonably relie[d] on the competence and good faith of a fiduciary." *Id.* In either circumstance, the limitations period begins to run only when the plaintiff knew or should have known of the facts giving rise to the claim. *Murray v. Rolquin*, 2023 WL 2421687, *10 (Del. Ch. Mar. 9, 2023) (discussing "inquiry notice").

22

Both circumstances apply here. First, Tim fraudulently concealed Josh's patent applications until March 2022, when he tried to use the approved ARES Patent to extract concessions from MIT for himself and Josh. When asked by F2E's attorney in August 2019 whether there was a patent on the ARES, Tim engaged in an affirmative act of misdirection, stating that "he" did not have a patent but failing to disclose that Josh was attempting (with Tim's knowledge and assistance) to patent the ARES in his own name.

Second, at all relevant times, Alubbad was entitled to rely on Tim, as MIT's president and fiduciary, to provide truthful and complete information regarding the company's intellectual property rights. The evidence showed that Tim betrayed his fiduciary duties by actively assisting Josh in the filing of Josh's 2018 Provisional Application and then sidestepping a direct question about the existence of a patent on MIT's only product. Tim did not disclose either Josh's 2018 Provisional Application or Josh's 2019 Non-Provisional Application to Alubbad until March 2022, underline: after the ARES Patent had been issued to Josh.

Accordingly, the three-year limitations period for MIT's claim in Count I did not begin to run until March 3, 2022, when Tim disclosed the ARES Patent to Alubbad. That brings all of Tim's wrongful conduct with respect to the 2017 ARES redesign within the limitations period. At a minimum, the evidence put

forth in opposition to Tim's summary-judgment motion created jury questions on fraudulent concealment and equitable tolling.

Tim argued in a footnote that MIT was on "inquiry notice" of Tim's breach of fiduciary duties on May 21, 2020, when the Patent Office published Josh's 2019 Non-Provisional Application.[7]  JA501.  But publication of a patent application is <u>not</u> *per se* constructive notice.  *MV Circuit Design, Inc. v. Omnicell, Inc.*, 2015 WL 1321743 at *10 (N.D. Ohio March 24, 2015) ("the Court agrees with other courts that have held that mere publication of a patent or patent application is insufficient to put a claimant on notice of his claims relating to the patent"); *General Electric Co. v. Wilkins*, 2011 WL 3163348, at * 5 (E.D. Cal. July 26, 2011) (holding it is "not reasonable" to impose upon claimant the "onerous burden" of "scour[ing] the Patent Office's records for all patents issued to [defendant] each year").

The two cases Tim cited in his summary-judgment motion do not hold otherwise.  In both, the court found constructive notice not merely because the Patent Office had published a patent application, but because the defendants had made other public disclosures—of which the plaintiffs plainly were aware—that gave the plaintiffs reason to suspect their trade secrets were disclosed in patent applications filed by the defendants.  *See Informatics Applications Grp., Inc. v.*

---

[7] The District Court did not discuss the publication of any patent applications in its oral ruling.

*Shkolnikov*, 836 F. Supp. 2d 400, 417 n.11, 422 (E.D. Va. Dec. 27, 2011) (plaintiff had "duty to investigate public patent documents" because presentation given by plaintiff to customer "bore a copyright notation demonstrating [defendant's] claimed ownership and intention to file for patent protection"); *Adv. Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 182 Fed. Appx. 994, 999 (Fed. Cir. 2006) (defendant disclosed invention "through publications and at conferences" attended by plaintiff).

Here, unlike in *Informatics* and *Medtronic*, neither Josh nor Tim did anything to put MIT on notice that Josh intended to file for patent protection on the ARES solely in his own name. Quite the contrary, Tim actively concealed Josh's 2018 Provisional Application from Alubbad despite being asked by F2E's attorney whether a patent application had been filed on the ARES. It was reasonable for Alubbad to rely on Tim, MIT's President, to disclose any patent applications he knew about, especially when he was specifically invited to do so by F2E's attorney.

This case thus is closer to *MV Circuit Design*, in which the parties worked together for six years on a patented technology, after which one secretly filed a patent application without naming both parties as inventors. The court in *MV Circuit Design* held that the parties' mutual and long-term working relationship did not trigger a duty to search for possible patent applications. 2015 WL 1321743,

*10.  The same is true here.  Because F2E relied on the competence and good faith of a fiduciary—MIT's then-president—this a case where equitable tolling applies.

For similar reasons, District Court erred by relying on Tim's use of the term "patent pending" on MIT marketing materials, apparently as evidence that MIT had notice of Josh's 2018 Provisional Application.  JA2175-2176.  MIT could equally have understood those marketing statements to refer to either of <u>Tim's</u> two provisional patent applications, to which MIT retained all rights under the work-for-hire provision of the MIT Operating Agreement.  Tim actively encouraged that misunderstanding by telling F2E's attorney in August 2019—while Josh's 2018 Provisional Application was pending—that "he" (Tim) had filed a patent application solely so MIT could represent on marketing materials that it had a "patent pending" on the ARES.  Any obligation MIT arguably had to investigate was satisfied by F2E's direct question to Tim (MIT's fiduciary), about MIT's patent rights, and Tim's purposeful misdirection constitutes fraudulent concealment.

### C.  The District Court Improperly Dismissed MIT's Business Conspiracy Claim (Count III Against Both Appellees) Based on Irrelevant Conduct Outside the Limitations Period.

Virginia's five-year limitations period for business conspiracy does not begin to run "until the plaintiff suffers injury sufficient to give rise to the underlying tort claim."  *Safe Haven Wildlife Removal and Property Mng't Experts, LLC v.*

*Meridian Wildlife Services, LLC*, 736 F. Supp. 3d 432, 444-45 (W.D. Va. 2024) (noting that "when wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action"). The crux of MIT's business conspiracy claim was that Josh and Tim acted in November 2018 to usurp MIT's intellectual property rights by secretly patenting the ARES only in Josh's name. JA390.

The earliest MIT suffered any injury was May 21, 2020, when the Patent Office published Josh's 2019 Non-Provisional Application, thereby exposing MIT's confidential information to the world. That date is well within the five-year limitations period for a statutory business conspiracy. Moreover, even if the Court does not accept publication as the earliest relevant date, the earliest MIT even arguably could have been injured as a result of the alleged conspiracy was the date Josh filed Josh's 2018 Provisional Application, which was November 20, 2018.[8] That is still less than five years before MIT filed suit.

The District Court nonetheless granted summary judgment for Appellees on the business conspiracy claim, vaguely stating that "most of the issues that the

---

[8] MIT was never injured by the filing of any earlier provisional patent applications because MIT would have been at least a co-owner of any patent issued in response to those earlier applications. Those applications named Tim as an inventor, and Tim was subject to the work-for-hire provision of the MIT Operating Agreement. Additionally, those applications were abandoned and were never published, and thus never publicly exposed MIT's confidential information.

plaintiff is complaining about occurred more than five years before the time period in which this case was filed." JA2174. That was clear error. Whatever unspecified "issues" the District Court had in mind, the first overt act in the alleged conspiracy was Josh's filing (with Tim's knowledge and assistance) of Josh's November 2018 Provisional Application. Any "issues" prior to that act are legally irrelevant, and it was improper for the District Court to rely on them for statute-of-limitations purposes.

### D.     The District Court Ignored Misrepresentations by Tim as Recent as July 2022 in Dismissing MIT's Fraud Claim (Count V Against Tim).

Tim argued below, and the District Court apparently agreed, that MIT's fraud claim is barred by Virginia's two-year statute of limitations because MIT should have discovered Tim's false representation that Josh had signed a non-disclosure agreement when Alubbad first knew Tim could not find such an agreement signed by Josh. JA504. Knowledge that a document is purportedly missing, however, is not the same thing as knowledge that it never existed. In relying on the former, the District Court ignored the undisputed fact that Tim signed an agreement on July 27, 2022, specifically representing that "Joshua . . . executed with the Company a Non-Disclosure Agreement dated June 6, 2013" but that "the signed original Non-Disclosure Agreement[] cannot be located." JA1560. Moreover, Tim had previously "confirmed many times" that Josh had "signed an NDA approximately 10 years ago." JA1081. Indeed, the first time Tim ever stated

that Josh <u>did not</u> sign a non-disclosure agreement was in the statement of facts he submitted in support of his motion for summary judgment in this case. JA490.

The earliest MIT was even arguably on notice that Tim's representations about Josh's non-disclosure agreement were false was July 12, 2022, when Josh first represented that he had not signed any document with MIT. JA784. Even using that as the relevant date, MIT's fraud claim against Tim was filed within Virginia's two-year limitations period.

### E. The District Court Improperly Dismissed MIT's Unjust Enrichment Claim (Count IV Against Josh) Based on the Date Josh Applied for the ARES Patent, Not the Date on Which the ARES Patent Was Granted.

There was no dispute that Virginia law controlled the statute of limitations for MIT's unjust enrichment claim against Josh. Under Virginia law, the three-year limitations period for unjust enrichment starts to run at the time the unjust enrichment occurred. *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012).

Josh argued below that the limitations period began to run on the date he filed Josh's 2018 Provisional Application, and the District Court agreed. JA872. That is not the right analysis. Josh was not "enriched" in any conceivable way until the day he <u>received</u> the ARES Patent, which was November 16, 2021. JA334. That is the date on which Josh was granted the exclusive right to practice the claimed invention and to preclude others from doing so. MIT filed this action in October 2023, less

than two years after Josh received the ARES Patent. Thus, the unjust enrichment claim is not time-barred.

The cases Josh cited in support of his argument for an earlier accrual date are not remotely apposite. For example, in *Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 299 F. Supp. 2d 565, 576-77 (E.D. Va. 2004), the court stated that "[t]he statute of limitations for unjust enrichment begins to run at the time the unjust enrichment occurred, which is the moment the expected compensation is not paid." In other words, unjust enrichment occurs the moment a party receives a benefit without paying for its value. *Id.* In *Tao*, the defendant misrepresented that the plaintiff's intellectual property belonged to the defendant and used that intellectual property to bid on and receive a contract. The court held, without deciding whether any of the alleged trigger dates were appropriate, that all possible enrichment dates were outside the statute of limitations. *Id.*

Similarly, in *GIV, LLC v. IBM Corp.*, 2007 WL 1231443, *3 (E.D. Va. 2007), the court held that unjust enrichment first occurred on the date IBM received and began using the plaintiff's intellectual property without paying for its value. Josh does not compete with MIT, has never practiced the invention claimed in the ARES Patent, and has never licensed it to anyone. The first "benefit" he received from misusing MIT's intellectual property was when he received the ARES Patent solely

in his name.[9]  MIT's claim for unjust enrichment against Josh is expressly premised on his unjust receipt of the ARES Patent in November 2021.  There was no monetary or other benefit for Josh to disgorge before that date.  MIT's unjust enrichment claim thus was timely, and the District Court erred in holding otherwise.  *See Lismont v. Alexander Binzel Corp.*, 2013 WL 6095461, *13 n.5 (E.D. Va. Nov. 18, 2013) (holding that unjust enrichment claim by inventor left off patent application accrued no later than date patent issued).

### F.    The District Court Dismissed MIT's Breach-of-Contract Claim Against Josh (Count VI) Based on Purported 'Admissions' That Are Not Supported by the Record.

MIT alleged its breach-of-contract claim against Josh in the alternative because of the conflicting positions taken by Tim and Josh regarding whether Josh had ever signed a non-disclosure agreement.  The District Court granted summary judgment against MIT on that claim based on unidentified "admissions" that no such agreement existed.  JA2175.  That ruling is inconsistent with the evidence, which shows a disputed issue of fact regarding whether Josh signed an agreement that subsequently was lost or whether Josh never signed any agreement in the first place.

---

[9] Josh also argued that MIT had constructive notice of Josh's 2019 Non-Provisional Application on the date it was published.  However, constructive notice and enrichment are completely different concepts.  Josh does not state how he could have been <u>enriched</u> merely by the publication of a patent application, which may or may not result in an issued patent.

In his motion papers, Josh cited two short quotes from Alubbad's deposition testimony entirely out of context. JA877. The first quote followed questions from Josh's counsel about certain MIT financial documents provided to Tim in March 2024 in response to an information request made outside this litigation pursuant to the MIT Operating Agreement. JA956 [JA2649-2650]. Alubbad testified that he did not provide those financial documents to Josh because "Josh doesn't have an NDA." *Id.* In context, it is clear that Alubbad's statement reflected the position Josh had taken since July 2022 that he had "never signed any document with MIT." JA784. Alubbad was not willing to share sensitive financial information with someone when that individual did not believe he was under a non-disclosure agreement.

Similarly, the second quote was in response to questions from Josh's counsel about why MIT was demanding its confidential information back from Josh in this lawsuit in its original form. JA959 [JA2665-2666]. Again, Alubbad's quote that "Josh was never under NDA," read in context, clearly meant that Josh <u>did not</u> <u>believe</u> he was under a non-disclosure agreement, which Josh has insisted since July 2022, even though Tim continued to make contradictory representations after that time. Alubbad's purported "admissions," therefore, are entirely consistent with the positions the parties have taken both before and during this litigation: (1) Tim told Alubbad Josh had signed a non-disclosure agreement; (2) Alubbad

repeatedly asked Tim for a signed copy of the non-disclosure agreement; (3) Tim said repeatedly he believed Josh signed a non-disclosure agreement but could not find a copy of the document; and (4) Josh maintained beginning in July 2022 that he did not sign a non-disclosure agreement.

Whether Josh signed a non-disclosure agreement remains in dispute, despite Tim's opportunistic "admission" in his summary-judgment motion that Josh did not. That "admission" contradicts the position Tim took every other time he was asked about Josh's non-disclosure agreement. Indeed, even Josh testified that Tim thought Josh had signed the non-disclosure agreement. JA1177 [JA2733]. Appellees cannot brief MIT's breach-of-contract claim out of existence by "admitting" a fact that was in dispute throughout the litigation.

## III.    The District Court's Award of Attorneys' Fees to Tim Should Be Reversed.

The District Court's award of attorneys' fees to Tim was based on § 15(G) of the MIT Operating Agreement, which provides that the prevailing party "in any such litigation, arbitration or other dispute" shall be awarded reasonable attorneys' fees. JA69. The MIT Operating Agreement is governed by Delaware law, which means Delaware law controls whether fees should be awarded and the amount of any such fees.

If this Court reverses any of the summary-judgment rulings at issue on appeal (except with respect to Counts IV and VI, which solely concern Josh), it

necessarily must reverse the District Court's fees award.  If this Court does not reverse any of the summary-judgment rulings, it still should reverse the fees award because: (1) there is no evidence that the District Court even considered Delaware law; and (2) the award appears to have been influenced by inappropriate (and inaccurate) information about settlement negotiations.  JA2397-2398 (showing District Court was aware of Josh's settlement position).

The controlling case in Delaware with regard to attorneys' fees based on a contractual fee-shifting provision is *Bako Pathology LP v. Bakotic*, 288 A.3d 252 (Del. 2022).  Citing to *Bako*, MIT argued that Delaware law gave the District Court discretion not to award fees to any party based on the language in the MIT Operating Agreement and the circumstances of this case.  JA2342-2345.  There is nothing in the record indicating under what body of law the District Court decided the attorneys' fees motion, nor is there any indication that it even considered the controlling Delaware law set forth in *Bako*.  That failure alone requires reversal.

More importantly, Fed. R. Evid. 408 provides that settlement offers and the conduct and statements of participants in settlement negotiations should not come into evidence or otherwise be considered.  Courts deciding attorneys' fees motions enjoy a substantial amount of discretion.  It was completely improper, however, and fundamentally unfair to MIT, for the District Court to have been informed of offers made and positions taken in failed settlement negotiations and its discretion

influenced thereby.  Ensuring that settlement negotiations do not improperly influence the rulings of district judges is an issue bigger and far more important than this case.  If this Court does not use this opportunity to protect the sanctity of settlement discussions, then the policy encouraging settlement will be completely undercut in this Circuit.

## CONCLUSION

For the foregoing reasons, the Court should reverse the grant of summary judgment in favor of Appellants and vacate the judgment of attorneys' fees awarded to Appellee Timothy Clemente.

## REQUEST FOR ORAL ARGUMENT

Counsel for Appellant MIT respectfully requests oral argument.


Dated: January 14, 2025                           Respectfully submitted,

                                                  */s/Laurin H. Mills*
                                                  Laurin H. Mills (VA Bar 79848)
                                                  Brian Donnelly (VA Bar 82052)
                                                  WERTHER & MILLS, LLC
                                                  2121 Eisenhower Ave., Suite 608
                                                  Alexandria, VA  22314
                                                  laurin@werthermills.com
                                                  bdonnelly@werthermills.com
                                                  (703) 547-4693
                                                  (240) 912-3131 fax
                                                  *Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of
the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure
statement, table of contents, table of citations, statement regarding oral
argument, signature block, certificates of counsel, addendum, attachments):

> [ X ]   this brief contains [7,884] words.
> [    ]   this brief uses a monospaced type and contains [*state the
> number of*] lines of text.

2.      This brief complies with the typeface and type style requirements because:

> [ X ]   this brief has been prepared in a proportionally spaced typeface
> using [Microsoft Word 365] in [14pt Times New Roman]; or
> [    ]   this brief has been prepared in a monospaced typeface using
> [state name and version of word processing program] with
> [state number of characters per inch and name of type style].

Dated: January 14, 2025                    */s/ Laurin H. Mills*
                                           *Counsel for Appellant*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 14th day of January 2025, I caused this Corrected

Brief of Appellant and Corrected Joint Appendix to be filed electronically with the

Clerk of the Court using the CM/ECF System, which will send notice of such filing

to all counsel of record as registered CM/ECF users.

*/s/ Laurin H. Mills*
Counsel for Appellant
